IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM K. CROSBY, INDEPENDENT MOVEMENT OF PARATRANSIT RIDERS FOR UNITY, VEHICLES, EQUALITY ("IMPRUVE"), AYO MAAT, PATRICIA BAXTER CAROLINE MURPHY, CECELIA JACKSON, HAROLD BELLAMY, STEVIE DICKENS, RICHARD A. JAMES, MARLENE LUCAS, TRONEEKO FRENCH, TYQUAN BAXTER, GENEVARENE BAXTER, VENZELMA COTTON, And DEBBIE PITTMAN,<br><br>             Plaintiffs,<br><br>     v.<br><br>GOVERNOR "ROD" BLAGOJEVIC; REGIONAL TRANSPORATION AUTHORITY, JIM REILLY, CHAIRMAN; CHICAGO TRANSIT AUTHORITY, RON HUBERMAN, CHAIRMAN; PACE SUBURBAN BUS, RICHARD KWASNESKI, CHAIRMAN;<br><br>             Defendants. | NO. 07 C 06235 |

**ANSWER OF PACE, THE SUBURBAN BUS DIVISION OF REGIONAL TRANSIT AUTHORITY, TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

NOW COMES PACE, the Suburban Bus Division of Regional Transit Authority ("PACE"), through its undersigned attorneys, responds to Plaintiffs' first amended complaint as follows:

## INTRODUCTION

1. This is a action for declaratory and injunctive relief, as well as such other relief as may be just, proper and equitable, to remedy Defendants' continuing violations of the right of the Plaintiff's to basic and essential transportation services under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.,* Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* ("Rehabilitation Act"), the regulations promulgated under these statutes, and 42 U.S.C. § 1983.

      **Answer:** **PACE admits that Plaintiffs purport to bring this action pursuant to 42 U.S.C. 8 12131 et seq., 29 U.S.C. 8 794 et seq., and 42 U.S.C. 8 1983. PACE denies the remaining allegations in paragraph 1.**

2. Defendant Rod Blagojevich is Governor of the State of Illinois who, by amendatory veto, committed mass transit agencies in the State to provide free public transit to seniors riding so called "fixed route" transit systems while denying that privilege to persons with disabilities who have to rely on complementary paratransit service.

      **Answer:** **PACE admits that Rod Blagojevich is Governor of the State of Illinois. PACE lacks sufficient information to form a belief about the truth of the remaining allegations of paragraph 2 and therefore denies same.**

3. Defendant RTA describes itself as "the funding and financial oversight agency for the public transit operators in the six-county region of northeastern Illinois." "The RTA oversees the budgets and capital programs of the Chicago Transit Authority (CTA), Metra commuter rail, and PACE suburban bus." The RTA ensures that the region meets is statutory obligation to recover 50 percent of transit operating costs from fares or other income and distributes the portion of sales tax allocated to transit to the CTA, Metra and PACE." Source: http://www.rtachicago.com/support/english.asp#7, checks May 29, 2008.

      **Answer:** **PACE admits that the RTA oversees the budgets and capital programs of the CTA, Metra and PACE. PACE lacks sufficient information to form a belief about the truth of the remaining allegations of paragraph 3 and therefore denies same.**

4. Defendant CTA is a public entity that operates a fixed route system in the City of Chicago and certain contiguous suburbs through its bus and rail systems. Title II of the ADA requires mass transit agencies to provide complementary "paratransit services" to individuals with disabilities, who due to their disabilities cannot otherwise safely use fixed route mass transit. The ADA further requires agencies to provide paratransit service at "a level of service…. which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system." 42 U.S.C. § 12143 (a).

      **Answer:** **PACE admits the allegations of paragraph 4.**

5. Prior to July 1st, 2006, the CTA provided complementary paratransit services, under its own auspices, to individuals with disabilities who are unable to use fixed route transportation systems and who are determined to be eligible, for some or all of their

2

        trips, for such services under the American with Disabilities Act of 1990 and its implementing regulations.

        **Answer:** **PACE admits the allegations of paragraph 5.**

6.     Defendant PACE Suburban Bus is a public entity that operates bus service primarily outside of CTA's service area in the six "collar" counties of northeast Illinois. PACE took over administration of complementary paratransit service in the area served by the CTA on or about July 1, 2006, pursuant to Public Act 94-370. The law amended the RTA Act, assigning responsibility for funding, financial review and oversight for ADA Paratransit services in the RTA regions to the RTA.

        **Answer:** **PACE admits that it is a public entity that operates bus service in the six counties of northeast Illinois. PACE further admits that on or about July 1, 2006, pursuant to Public Act 94-370, the Illinois General Assembly amended the RTA Act by transferring responsibility for providing paratransit services in the Chicago area previously provided by the CTA to PACE, and assigning responsibility for funding, financial review and oversight for ADA paratransit services in the RTA regions to the RTA.**

7.     PACE provides services in the Chicago ADA district through fleets of vehicles, operated by contractors, which are dispatched to pick up registered users from any location within three-quarters of a mile of any fixed route rail or bus stop.

        **Answer:** **The term "Chicago ADA District" is not defined in the ACT or the Amended Complaint, and thus PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 7 as to that term and therefore denies same to the extent that it is inconsistent with the area actually in which PACE in fact provides paratransit services. PACE admits the remaining allegations of paragraph 7.**

## FARES

8.     Chicago ADA Paratransit riders purchase tickets in books of ten for $25, or they may pay cash. Chicago ADA Paratransit riders may also purchase monthly passes for unlimited rides.

        **Answer:** **PACE denies that Chicago ADA Paratransit riders can purchase tickets in books of ten for $25, PACE admits the remaining allegations of paragraph 8.**

9. On February 1st, 2008, PACE doubled the cost of a Chicago ADA monthly pass from $75 per month to $150 per month; given that many paratransit riders, including many of the plaintiffs, live on SSI or other fixed income and below the poverty level, this represents an oppressive and financially-crippling burden.

   **Answer:** **PACE admits that on or about February 1, 2008 it raised the price of a monthly pass for Paratransit riders, however, affirmatively states that a monthly pass for Paratransit riders is not required under ADA or any other applicable statute or regulation. PACE lacks knowledge or sufficient information to form a belief about the truth of the remaining allegations of paragraph 9 and therefore denies same.**

10. On information and belief, the 200% fare increase for the monthly pass was predicated on the provision of Public Act 94-370 that requires: "(ii) that the level of fares charged for ADA paratransit services is sufficient to cause the aggregate of all projected revenues from such fares charged and received in each fiscal year to equal at least 10% of the aggregate costs of providing such ADA paratransit services in fiscal years 2007 and 2008 and at least 12% of the aggregate costs of providing such ADA paratransit services in fiscal years 2009 and thereafter; for purposes of this Act, the percentages in this subsection (b)(ii) shall be referred to as the "system generated ADA Paratransit services revenue recovery ratio".

    **Answer:** **PACE admits that the fare increase for the monthly pass was partially predicated on the provision of Public Act 94-370 quoted in paragraph 10, however, affirmatively states that there were numerous other factors for the increase and that a monthly pass for Paratransit riders is not required under ADA or any other applicable statute or regulation.**

11. As such, the "system generated ADA Paratransit services revenue recovery ratio" circumvents and violates the ADA and Rehabilitation Act, as it results in an insurmountable economic barrier to Chicago ADA Paratransit patrons and is not economically comparable to fixed route CTA monthly pass-holders. It is tantamount to eliminating the monthly pass for the vast majority of those paratransit-eligible persons.

    **Answer:** **PACE denies each and every allegation of paragraph 11.**

12. On information and belief, sales of Chicago ADA monthly passes plummeted from over 700 to less than 130 as a result of the 200% increase, thus, the fare increase is an insurmountable economic obstacle for over 80% of those former pass-holders.

> **Answer:** **PACE denies each and every allegation of paragraph 12 and affirmatively states that a monthly pass for Paratransit riders is not required under ADA or any other applicable statute or regulation.**

13. While Chicago ADA monthly passes doubled in price, CTA promoted and continues to promote sales of electronically-debited "pay as you go" passes and unlimited 30 day or monthly passes on its fixed route services for $75 per month, offering automated pre-authorized monthly debit service, discounted fares, and replacement of lost passes.

    > **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 13 and therefore denies same.**

14. The CTA's "Chicago Card" and "Chicago Card Plus" offer lower fares, quicker boarding, protected fares and a bonus reward. Chicago Card and Chicago Card Plus customers who "pay as you go" get a $2.00 bonus for each $20 of value added. Card holders, whether "pay as you go" or monthly, receive $.25 transfers on the fixed route system whereas cash customers may not receive transfers.

    > **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 14 and therefore denies same.**

15. Therefore, CTA provides strong economic and convenience incentives to non-disabled individuals to purchase unlimited monthly or electronically-debited passes, while persons with disabilities are financially discouraged and dis-incented from purchasing monthly paratransit passes in the same service area, i.e., the City of Chicago and contiguous suburbs.

    Source:  http://www.transitchicago.com/maps/fares.html

    > **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 15 and therefore denies same, however, affirmatively states that a monthly pass for Paratransit riders is not required under ADA or any other applicable statute or regulation.**

16. Persons with disabilities able to access and ride CTA fixed route may obtain Reduced Fare monthly passes for $35 per month.

    **Answer:** **PACE admits the allegations of paragraph 16, however, affirmatively states that a monthly pass for Paratransit riders is not required under ADA or any other applicable statute or regulation.**

17. On March 17th, 2008 the "Seniors Ride Free" program was instituted by mass transit agencies throughout the State of Illinois, including the Defendants. In January, 2008 Illinois lawmakers approved and Governor Rod Blagojevich signed into law, through an amendatory veto process, House Bill 656 that provided new annual operating funds to northeastern Illinois' transit system.

    **Answer:** **PACE admits that in January, 2008 Illinois lawmakers approved and Governor Rod Blogojevich signed into law, through an amendatory veto process, House Bill 656 that provided new annual operating funds to northeastern Illinois' transit system and instituted a Seniors Ride Free policy mass transit agencies, including PACE and the CTA. On or about March 17, 2008, PACE implemented the policy, as required by law. PACE denies the remaining allegations of Paragraph 17 to the extent that they imply that PACE instituted such policy change, or otherwise acted for reasons other than to comply with statutory mandate.**

18. The new law provides free rides on fixed routes to seniors aged 65 and older living in the RTA's service region of Cook, DuPage, Kane, Lake, McHenry, and Will counties on the Chicago Transit Authority (CTA), Metra and PACE.

    **Answer:** **PACE admits the allegations of paragraph 18.**

## **SERVICE**

19. Many individuals with disabilities, including the individuals plaintiffs, must depend on paratransit to conduct crucial aspects of their daily lives. In some cases they must rely on paratransit to travel to and from their places of employment. Others participate in volunteer activities. Some of these plaintiffs have a standing "subscription" reservation for a vehicle to pick them up on a regular schedule for their recurring trips to work and back. If they cannot rely on paratransit, they risk being unable to work and being deprived of their livelihood and of the personal rewards from being productive members of society.

    **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 19 and therefore denies same.**

20. In other cases, plaintiffs must depend on paratransit to travel to and from medical appointments, such as dialysis treatments, physical therapy and physician examinations. All users depend on paratransit for important personal appointments and civic, educational, and religious activities much as individuals without disabilities rely on their personal automobiles, commuter rail, bus, other transportation facilities and even walking to conduct their personal affairs.

> **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 20 and therefore denies same.**

21. Despite the crucial role paratransit necessarily plays in the lives of its users, PACE fails to provide even minimally adequate serve and is materially inferior to the CTA rail and bus public transportation available to people without disabilities. A substantial portion of rides are late, often very late. Some rides arrive unreasonably early and leave before the scheduled arrival time. Some rides do not appear at all. Some riders are so extended and circuitous (often because the drivers are picking up and dropping off users at widely separated locations) that they last much longer than a reasonably direct trip would. During these trips, riders are denied access to food and water, medicine, and bathroom facilities. PACE's inadequate performance poses a threat to the health of many of its users.

> **Answer:** **PACE denies each and every allegation of paragraph 21.**

22. The impact of PACE's inadequate service on the lives of its riders is profound. In order to be able to adhere to their schedules or make appointments, riders must schedule rides for several hours before the time they would select if the service were reliable. They must appear at the pickup location well before the scheduled time to guard against a vehicle appearing too early and leaving. Thus, even if a particular ride is on time, PACE users must waste a significant amount of time each day attempting to be on time for important obligations. The unreliability of the PACE paratransit service causes serious disruptions to their schedules and erodes the quality of their lives.

> **Answer:** **PACE denies each and every allegation of paragraph 22.**

23. In 1990, Congress enacted the ADA to address pervasive discrimination against persons with disabilities, including discrimination in the critical area of public transportation. Congress stated that the purpose of the ADA is to provide: "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."

  **Answer:**  **PACE admits the allegations of paragraph 23.**

24. Title II of the ADA prohibits discrimination by public entities on the basis of disability, and specifically provides that no qualified individual with a disability shall be excluded from participation in or denied the benefits of the services, programs or activities with a disability from discrimination by a public entity "in connection with the provision of transportation service." 49 C.F.R. §37.5(a).

  **Answer:**  **PACE denies Plaintiffs' characterization of 49 C.F.R. § 37.5 (a) and affirmatively states that 49 C.F.R. § 37.5 (a) states: "[n]o entity shall discriminate against an individual with a disability in connection with the provision of transportation service."**

25. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and its implementing regulations prohibit recipients of federal funding from discrimination against people with disabilities. Section 504 provides, in pertinent part: "[n]o otherwise qualified individual with a disability … . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C. § 794(a).

  **Answer:**  **PACE denies Plaintiffs' characterization of 29 U.S.C. § 794 (a) and further denies that Plaintiffs accurately quoted from same. PACE affirmatively states that 29 U.S.C. § 794 (a)(2) states: "[t]he remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 194 [42 U.S.C.A § 2000 d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance of Federal provider of such assistance under Section 794 of this title."**

26. Recognizing that the lack of access to reliable transportation is a significant barrier encountered by persons with disabilities, 42 U.S.C. § 12101(a), the ADA expressly requires state and public entities that provide public transportation services (known as "fixed route" services) also to provide complementary "paratransit services" to individuals with disabilities, like the plaintiffs, who by virtue of their disabilities cannot otherwise use the public transportation system. 42 U.S.C. § 12143. The U.S. Department of Transportation's regulations established pursuant to the ADA set forth the specific requirements for paratransit services. 49 C.F.R. § 37.121, *et seq.* Federal regulation also requires a public entity to ensure that any contractor that provides services on its behalf complies with the ADA. 49 C.F.R. § 37.23(a).

  **Answer:**  **PACE denies Plaintiffs' characterization of 42 U.S.C. § 12101 (a). PACE admits the remaining allegations of paragraph 26.**

27. PACE paratransit customers are required to telephone to schedule a ride at least one day in advance of their travel date and must meet the vehicle outside at a curb at a specified pickup location. PACE paratransit is a shared ride service. PACE'S customers pay $2.50 per ride, regardless of the distance.

   **Answer:** **PACE admits it utilizes a day before reservation system (which can be less than 24 hours before pick-up), provides origin to destination service and utilizes a shared ride system, all in conformance with ADA regulations. PACE denies the remaining allegations of Paragraph 27.**

28. The plaintiffs are individuals within the City of Chicago and contiguous surburbs who need reliable and accessible public transportation to travel to work, medical appointments, religious services, and other critical life activities. Because of the nature of their disabilities and the inaccessibility to them of the general "fixed-route" public transportation system, these plaintiffs must rely on PACE paratransit as their primary means of transportation.

   **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 28 and therefore denies same.**

29. PACE paratransit is materially inferior to the public transportation available to people without disabilities. By failing to provide the plaintiffs with a paratransit system that complies with federal law, defendants have unlawfully discriminated against plaintiffs, unlawfully excluded them from equal participation in public transportation services, and unlawfully denied them equal access to public transportation services. The plaintiffs are therefore entitled to declaratory, injunctive and equitable relief.

   **Answer:** **PACE denies each and every allegation of paragraph 29.**

## INFRASTRUCTURE

30. As mentioned supra, the ADA was passed in 1990; as such, the CTA and related entities have been on notice for the past eighteen years of their obligation under federal law to make the transit system accessible to persons with disabilities; despite that clear notice and the passage of almost two decades, the CTA remains inaccessible at many points throughout its fixed route rail and bus system.

> **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 30 and therefore denies same.**

31. Additionally, even at points where the CTA system is arguably accessible to some persons with disabilities, the provisions for persons with disabilities are of inadequate capacity and not calculated to integrate significant numbers of persons with disabilities into the mainstream. In fact, if all persons with disabilities attempted to use fixed route transit, the CTA system would grind to a halt.

    > **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 31 and therefore denies same.**

32. While, eighteen years after the passage of the ADA, the large number of CTA rail stations still do not have elevators, even those with elevators require attendants to manually drag ramps out to load persons in wheelchairs into railcars, and significantly delay service as a result; additionally, elevators are frequently out of service with no prior notice provided to riders.

    > **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 32 and therefore denies same.**

33. While the CTA touts that 100% of its bus fleet has lifts for wheelchairs, if patrons cannot get to bus stops because they are inaccessible and lack nearby curb-cuts to accommodate patrons with disabilities, the presence of lifts on the buses is meaningless.

    > **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 33 and therefore denies same.**

### JURISDICTION AND VENUE

34. This Court has jurisdiction under 28 U.S.C. § 1331 because the claims arise under federal law.

    > **Answer:** **PACE admits the allegations of paragraph 34.**

35. This Court has jurisdiction over plaintiffs' request for declaratory judgment pursuant to 28 U.S.C. § ~ 2201 and 2202.

    **Answer:** **PACE admits the allegations of paragraph 35.**

36. Venue of this action properly lies in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 (a)(1)-(2) because many of the events and omissions giving rise to Plaintiffs' claims are occurring in this district.

    **Answer:** **PACE admits that venue of this action properly lies in Northern District of Illinois. PACE denies the remaining allegations of paragraph 36.**

## PARTIES

37. Plaintiff Independent Movement of Paratransit Riders for Unity, Vehicles, and Equality ("IMPRUVE") is a non-profit membership organization that works on behalf of people with disabilities in the Chicago metropolitan area to ensure that civil rights laws important to people with disabilities are enforced.

    **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 37 and therefore denies same.**

38. Plaintiffs are persons with disabilities residing in the Chicago ADA Paratransit area. Most, but not all of the plaintiffs are members of IMPRUVE. All plaintiffs depend on Paratransit for essential services such as medical appointments, shopping, religious services, community activities, family gatherings, legal and civic proceedings, and educational and employment opportunities. All of the plaintiffs have been eligible for paratransit services from PACT at all times relevant to this Complaint. Although each individual's situation is unique, it is a fair statement to say that their impediments are more severe than individuals riding fixed route transit.

    **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 38 and therefore denies same.**

39. On information and belief, the plaintiffs represent perhaps one of the most physically, economically, and politically disadvantaged groups imaginable; it has been estimated that, among the Chicago ADA paratransit patrons:

11

- 80% are African-American
- 77% have no household vehicle
- 81% have annual income below $20,000; 69% below $15,000; 47% below $10,000; 16% below $5,000;
- 58% are 65 and older.  (2004 CTA figures).

**Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 39 and therefore denies same.**

## CLAIMS

### First Claim for Relief

(Equal Protection, ADA, and Rehabilitation Act – All defendants)

40. Plaintiffs reallege and incorporate by reference all facts set forth in the previous paragraphs, and further allege:

    **Answer:** **PACE incorporates and realleges here the answers to paragraphs 1-39 as though fully set forth here.**

41. By providing free mass transit service to individuals 65 years of age and older, while denying that service to persons with disabilities 65 years of age and older, defendant Governor Blagojevich and RTA, CTA, and PACE have denied persons with disabilities, including certain plaintiffs, the equal protection of the laws of the State of Illinois, and violated the ADA and Rehabilitation Act, as well as 42 U.S.C. § 1983.

    **Answer:** **PACE denies each and every allegation of paragraph 41.**

### Second Claim for Relief

(Violations of the Americans with Disabilities Act – RTA, CTA and PACE)

42. Plaintiffs reallege and incorporate by reference all facts set forth in the previous paragraphs, and further allege:

    **Answer:** **PACE incorporates and realleges here the answers to paragraphs 1-41 as though fully set forth here.**

43. At all relevant times, plaintiffs are and have been "qualified individuals with a disability" within the protection of Title II of the ADA, 42 U.S.C. § 12131.

   **Answer:** **PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 43 and therefore denies same.**

44. Defendants RTA, CTA, and PACE have discriminated against the plaintiffs in violation of Title II of the ADA, 42 U.S.C. 12 143(a), by erecting insurmountable economic barriers to plaintiffs' use of complementary paratransit by, *inter alia,* setting the monthly pass fare at $150.

   **Answer:** **PACE denies each and every allegation of paragraph 44.**

45. Defendants RTA, CTA, and PACE have discriminated against the plaintiffs in violation of Title II of the ADA, 42 U.S.C. 12 143(a), by failing to provide transportation services to individuals with disabilities, including individuals who are mobility impaired, that are sufficient to provide these individuals a level of service that is comparable to the level of designated public transportation services provided to individuals without disabilities.

   **Answer:** **PACE denies each and every allegations of paragraph 45.**

46. Defendants are "public entities" under Title II of the ADA, RTA, CTA and PACE are programs or activities of a public entity.

   **Answer:** **PACE admits only that Defendants are "public entities" under Title II of the ADA, and denies the remaining allegations of paragraph 46.**

47. Defendants have unlawfully failed to meet required service criteria for their complimentary paratransit system. 49 C.F.R. §37.13 1. Specifically, defendants have permitted an operational pattern and practice that significantly limits service to ADA paratransit-eligible persons. 49 C.F.R. § 37.131(0(3).

   **Answer:** **PACE denies each and every allegation of paragraph 47.**

48. Defendants have engaged in a continuing and pervasive pattern and practice that have caused substantial numbers of untimely pickups for initial and return trips and substantial numbers of trip denials or missed trips. 49 C.F.R. § 37.131(0(3). These violations of the ADA and its implementing regulations are also evidenced by: unreasonably lengthy and circuitous trips; a significant number of driver "no-shows" resulting in missed trips; discourteous telephone reservation service; inadequate

telephone coverage and connections, including failure to answer the telephone, placing callers on hold for excessively long periods, and dropped calls; failing to provide accurate information about the location of assigned vehicles; failing to respond to the needs of disabled riders; recording a large number of "false no-shows"; flawed implementation and enforcement of the "No-Show/Late Cancellation Policy"; failing to announce the arrival of the vehicle to visually-impaired riders; creating health hazards caused by exposure to the elements due to late pickups and erroneous ride status information; failing to adequately train drivers regarding the need and method for restraining wheelchairs and scooters inside paratransit vehicles; failing to equip vehicles with adequate heat and air conditioning systems, scooter restraints, and operational wheelchair lifts; and other operational problems within the control of RTA, CTA and PACE.

**Answer:    PACE denies each and every allegation of paragraph 48.**

49. Defendants have denied plaintiff's equal participation in its transportation system because of their disabilities, denied plaintiffs the benefits of the services, programs, and activities of RTA, CTA and PACE because of their disabilities, and discriminated against plaintiffs because of their disabilities.

**Answer:    PACE denies each and every allegation of paragraph 49.**

50. Defendants' failure to provide plaintiffs with equal, meaningful access to the benefits of the facilities, programs, services, and activities of RTA, CTA and PACE violates the ADA, 42 U.S.C. § 12131, *et seq.*, and its implementing regulations, 49 C.F.R. Part 37.

**Answer:    PACE denies each and every allegation of paragraph 50.**

51. Defendants' acts and omissions constitute ongoing and continuous violations of Title II of the ADA, and, unless restrained and enjoined from doing so, defendants will continue to violate Title II. Defendants' acts and omissions, unless enjoined, will continue to inflict an immediate threat of irreparable injuries for which plaintiffs have no adequate remedy at law.

**Answer:    PACE denies each and every allegation of paragraph 51.**

52. In engaging in the conduct described above, Defendants have either intentionally discriminated against plaintiffs or been deliberately indifferent to the strong likelihood that the pursuit of its policies would result in violations of federally protected rights.

**Answer:    PACE denies each and every allegation of paragraph 52.**

### Third Claim for Relief

(Violations of the Rehabilitation Act – RTA, CTA, and PACE)

53. Plaintiffs reallege and incorporate by reference all facts set forth in the previous paragraphs and further allege:

    **Answer:   PACE incorporates and realleges here its answers to paragraphs 1-52 as though fully set forth here.**

54. Plaintiffs are "qualified individual(s) with a disability" under Section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794. They are also "handicapped person(s)" within the meaning of 49 C.F.R. § 27.5.

    **Answer:   PACE lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 54 and therefore denies same.**

55. Defendants RTA, CTA, and PACE operate "program(s) or activity receiving Federal financial assistance" under Section 504 of the Rehabilitation Act.

    **Answer:   PACE admits the allegations of paragraph 55.**

56. Defendants have denied plaintiffs equal participation in their transportation services and made their participation unduly burdensome solely by reason of plaintiffs' disabilities in violation of section 504 of the Rehabilitation Act of 1973 and its implementing regulations. 49 C.F.R. Part 27.

    **Answer:   PACE denies each and every allegation of paragraph 56.**

57. Defendants have denied plaintiffs the benefits of the service, programs, and activities of its transportation services.

    **Answer:   PACE denies each and every allegation of paragraph 57.**

58. Defendants have subjected plaintiffs to discrimination solely by reason of their disabilities.

    **Answer:   PACE denies each and every allegation of paragraph 58.**

59. These violations of Section 504 by defendants establish a claim for declaratory and injunctive relief and compensatory damages against defendant pursuant to Section 505 of the Rehabilitation Act, 29 U.S.C. § 794a(a)(2).

   **Answer:    PACE denies each and every allegation of paragraph 59.**

60. In engaging in the conduct described above, defendants have either intentionally discriminated against plaintiffs or been deliberately indifferent to the strong likelihood that the pursuit of its policies would result in violations of federally protected rights.

   **Answer:    PACE denies each and every allegation of paragraph 60.**

### Fourth Claim for Relief

61. Plaintiffs reallege and incorporate by reference all facts set forth in the previous paragraphs, and further allege.

   **Answer:    PACE incorporates and realleges here its answers to paragraphs 1-60 as though fully set forth here.**

62. Defendants'' violations of 42 U.S.C. § 12132, *et seq.*, and Section 504 of the Rehabilitation Act, as set forth in plaintiffs' first, second and third claims for relief, establish a cause of action under 42 U.S.C. § 1983 for declaratory and injunctive relief and compensatory damages against defendants. Specifically, the defendants, acting under color of state law, have violated the rights of the plaintiffs under the ADA, Section 504 of the Rehabilitation Act, and the Equal Protection clause of the Fourteenth Amendment.

   **Answer:    PACE denies each and every allegation of paragraph 62.**

63. In engaging in the conduct described above, defendants have either intentionally discriminated against plaintiffs or been deliberately indifferent to the strong likelihood that the pursuit of its policies would result in violations of federally protected rights.

   **Answer:    PACE denies each and every allegation of paragraph 63.**

WHEREFORE, PACE, the Suburban bus division of Regional Transit Authority, requests judgment in its favor and against all Plaintiffs and for such further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Defendant Pace, the Suburban Bus Division of Regional Transit Authority, demands a trial by jury of all issues triable of right by a jury, pursuant to Federal Rule of Civil Procedure 38(b).

        **Respectfully submitted,**
        **PACE, THE SUBURBAN BUS DIVISION OF**
        **REGIONAL TRANSIT AUTHORITY**
        By:

        _____ /s/ Kevin G. Costello _____
        KEVIN G. COSTELLO

Kevin G. Costello
Attorney No. 6196839
Zukowski, Rogers, Flood & McArdle
50 Virginia Street
Crystal Lake, IL  60014
(815) 459-2050

Z:\P\PACE\ads Crosby Federal 07-6235\Answer.amendedComplaint.doc

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on this 1st day of July, 2008, a true and correct copy of Answer of PACE, the Suburban Bus Division of Regional Transit Authority, to Plaintiffs' First Amended Complaint was filed electronically in accordance with the General Order on Electronic Case Filing, constituting service upon the following Filing Users:

TO:   Christopher Davis Kruger, Esq.
      The Law Offices of Christopher Kruger
      2022 Dodge Avenue
      Evanston, IL  60201

TO:   Brad L. Jansen
      Judith A. Kelley
      Brigett Pawlak
      Chicago Transit Authority Law Dept.
      567 W. Lake Street 6th Floor
      Chicago, Illinois 60661

                                        /s/ Kevin G. Costello