UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM K. CROSBY, INDEPENDENT )
MOVEMENT OF PARATRANSIT RIDERS )
FOR UNITY, VEHICLES, EQUALITY )
("IMPRUVE"), AYO MAAT, PATRICIA BAXTER, )
CAROLINE MURPHY, CECELIA JACKSON, )
HAROLD BELLAMY, STEVIE DICKENS, )
RICHARD A. JAMES, MARLENE LUCAS, )
TRONEEKO FRENCH, TYQUAN BAXTER, )
GENEVARENE BAXTER, VENZELMA COTTON, )
and DEBBIE PITTMAN, )
 ) NO. 07 C 06235
Plaintiffs, )
 ) Judge Charles P. Kocoras
v. )
 )
GOVERNOR "ROD" BLAGOJEVIC; )
REGIONAL TRANSPORATION AUTHORITY, )
JIM REILLY, CHAIRMAN; CHICAGO TRANSIT )
AUTHORITY, RON HUBERMAN, CHAIRMAN; )
PACE SUBURBAN BUS, RICHARD KWASNESKI, )
CHAIRMAN; )
 )
Defendants. )

## DEFENDANT CHICAGO TRANSIT AUTHORITY'S ANSWER AND AFFIRMATIVE DEFENSE TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Chicago Transit Authority ("CTA"), by its undersigned attorneys, responds to

Plaintiffs' first amended complaint as follows:

### INTRODUCTION

### PARAGRAPH NO. 1:

This is a action for declaratory and injunctive relief, as well as such other relief as may be
just, proper and equitable, to remedy Defendants' continuing violations of the right of the
Plaintiff's to basic and essential transportation services under Title II of the Americans with
Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*, Section 504 of the Rehabilitation
Act of 1973, 29 U.S.C. § 794, *et seq.* ("Rehabilitation Act"), the regulations promulgated under
these statutes, and 42 U.S.C. § 1983.

**ANSWER:**

CTA admits that Plaintiffs purport to bring this action on the basis described in Paragraph

No. 1, but CTA denies that it discriminated against or violated any laws pertaining to Plaintiffs,

and denies the remaining allegations in Paragraph No. 1.

**PARAGRAPH NO. 2:**

Defendant Rod Blagojevich is Governor of the State of Illinois who, by amendatory veto, committed mass transit agencies in the State to provide free public transit to seniors riding so called "fixed route" transit systems while denying that privilege to persons with disabilities who have to rely on complementary paratransit service.

**ANSWER:**

CTA admits that Rod Blagojevich is Governor of the State of Illinois.  CTA lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations in Paragraph No. 2, and therefore denies those allegations.

**PARAGRAPH NO. 3:**

Defendant RTA describes itself as "the funding and financial oversight agency for the public transit operators in the six-county region of northeastern Illinois." "The RTA oversees the budgets and capital programs of the Chicago Transit Authority (CTA), Metra commuter rail, and PACE suburban bus."  "The RTA ensures that the region meets its statutory obligation to recover 50 percent of transit operating costs from fares or other income and distributes the portion of sales tax allocated to transit to the CTA, Metra and PACE." Source: http://www.rtachicago.com/support/english.asp#7, checked May 29, 2008.

**ANSWER:**

CTA admits that the RTA oversees the budgets and capital programs of the CTA, Metra

and PACE.  CTA lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the remaining allegations in Paragraph No. 3, and therefore denies those allegations.

**PARAGRAPH NO. 4:**

Defendant CTA is a public entity that operates a fixed route system in the City of Chicago and certain contiguous suburbs through its bus and rail systems. Title II of the ADA requires mass transit agencies to provide complementary "paratransit services" to individuals with disabilities, who due to their disabilities cannot otherwise safely use fixed route mass transit. The ADA further requires agencies to provide paratransit service at "a level of service . . . which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system." 42 U.S.C. § 12 143 (a).

**ANSWER:**

CTA admits the allegations contained in the first sentence of Paragraph No. 4. CTA

denies that the characterization of Title II of the ADA in Paragraph No. 4 fully or accurately

represents Title II of the ADA. CTA further responds that the remaining allegations in

Paragraph No. 4 call for legal conclusions for which no response is required, and thus CTA

neither admits nor denies those allegations. Further answering, CTA states that Title II of the

ADA speaks for itself and to the extent that the allegations contained in Paragraph No. 4 vary

from or seek to alter or in any way amend the contents, meaning or intent of Title II of the ADA,

CTA denies those allegations.

**PARAGRAPH NO. 5:**

Prior to July 1st, 2006, the CTA provided complementary paratransit services, under its own auspices, to individuals with disabilities who are unable to use fixed route transportation systems and who are determined to be eligible, for some or all of their trips, for such services under the American with Disabilities Act of 1990 and its implementing regulations.

**ANSWER:**

CTA admits the allegations in Paragraph No. 5.

**PARAGRAPH NO. 6:**

Defendant PACE Suburban Bus is a public entity that operates bus service primarily outside of CTA's service area in the six "collar" counties of northeast Illinois. PACE took over administration of complementary paratransit service in the area served by the

214035v1

CTA on or about July 1, 2006, pursuant to Public Act 94-370. The law amended the RTA Act, assigning responsibility for funding, financial review and oversight for ADA Paratransit services in the RTA regions to the RTA.

**ANSWER:**

CTA admits the allegations in the first and third sentences of Paragraph No. 6. CTA further admits that, on or about July 1, 2006, pursuant to Public Act 94-370, responsibility was transferred to PACE to provide paratransit services in the Chicago area, for which CTA was previously responsible. To the extent that Plaintiffs purport to fully or accurately describe the contents of Public Act 94-370 in Paragraph No. 6, CTA denies the remaining allegations in Paragraph No. 6.

**PARAGRAPH NO. 7:**

PACE provides services in the Chicago ADA district through fleets of vehicles, operated by contractors, which are dispatched to pick up registered users from any location within three-quarters of a mile of any fixed route rail or bus stop.

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph No. 7 and therefore denies those allegations.

**FARES**

**PARAGRAPH NO. 8:**

Chicago ADA Paratransit riders purchase tickets in books of ten for $25, or they may pay cash. Chicago ADA Paratransit riders may also purchase monthly passes for unlimited rides.

**ANSWER:**

CTA denies that Chicago ADA Paratransit riders purchase tickets in books of ten for $25. CTA admits the remaining allegations in Paragraph No. 8.

214035v1

**PARAGRAPH NO. 9:**

On February 1st, 2008, PACE doubled the cost of a Chicago ADA monthly pass from $75 per month to $150 per month; given that many paratransit riders, including many of the plaintiffs, live on SSI or other fixed income and below the poverty level, this represents an oppressive and financially-crippling burden.

**ANSWER:**

On information and belief, CTA admits that on or about February 1, 2008, PACE raised the price of a monthly pass for paratransit riders. CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph No. 9 and therefore denies those allegations.

**PARAGRAPH NO. 10:**

On information and belief, the 200% fare increase for the monthly pass was predicated on the provision of Public Act 94-370 that requires: "(ii) that the level of fares charged for ADA paratransit services is sufficient to cause the aggregate of all projected revenues from such fares charged and received in each fiscal year to equal at least 10% of the aggregate costs of providing such ADA paratransit services in fiscal years 2007 and 2008 and at least 12% of the aggregate costs of providing such ADA paratransit services in fiscal years 2009 and thereafter; for purposes of this Act, the percentages in this subsection (b)(ii) shall be referred to as the "system generated ADA Paratransit services revenue recovery ratio".

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph No. 10 and therefore denies those allegations. Further answering, CTA states Public Act 94-370 speaks for itself and to the extent that the allegations contained in Paragraph No. 10 vary from or seek to alter or in any way amend the contents, meaning or intent of Public Act 94-370, CTA denies those allegations.

**PARAGRAPH NO. 11:**

As such, the "system generated ADA Paratransit services revenue recovery ratio" circumvents and violates the ADA and Rehabilitation Act, as it results in an insurmountable economic barrier to Chicago ADA Paratransit patrons and is not economically comparable to

214035v1

fixed route CTA monthly pass-holders. It is tantamount to eliminating the monthly pass for the vast majority of those paratransit-eligible persons.

**ANSWER:**

CTA denies that any response is required to the allegations in Paragraph No. 11 because they call for legal conclusions rather than factual responses.  To the extent an answer is required, CTA denies the allegations in Paragraph No. 11.

**PARAGRAPH NO. 12:**

On information and belief, sales of Chicago ADA monthly passes plummeted from over 700 to less than 130 as a result of the 200% increase, thus, the fare increase is an insurmountable economic obstacle for over 80% of those former pass-holders.

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that "sales of Chicago ADA monthly passes plummeted from over 700 to less than 130 as a result of the 200% increase," and therefore CTA denies those allegations.  CTA denies the remaining allegations in Paragraph No. 12.

**PARAGRAPH NO. 13:**

While Chicago ADA monthly passes doubled in price, CTA promoted and continues to promote sales of electronically-debited "pay as you go" passes and unlimited 30 day or monthly passes on its fixed route services for $75 per month, offering automated pre-authorized monthly debit service, discounted fares, and replacement of lost passes.

**ANSWER:**

CTA admits that it offers discounted fares and promotes the sales of passes, including 30-day passes, for its fixed-route service, including passes for $75.  CTA denies that the remaining allegations fully or accurately describe its offerings with respect to its fares and passes and therefore denies the remaining allegations in Paragraph No. 13.

214035v1

**PARAGRAPH NO. 14:**

The CTA's "Chicago Card" and "Chicago Card Plus" offer lower fares, quicker boarding, protected fares and a bonus reward. Chicago Card and Chicago Card Plus customers who "pay as you go" get a $2.00 bonus for each $20 of value added. Card holders, whether "pay as you go" or monthly, receive $.25 transfers on the fixed route system whereas cash customers may not receive transfers.

**ANSWER:**

CTA admits that it offers "Chicago Card" and "Chicago Card Plus" fare cards. CTA further admits that, under certain circumstances, fare card holders may receive a $2.00 bonus for each $20 of value added to certain fare cards. CTA further admits that some transfers may be made for $.25. CTA denies that the remaining allegations in Paragraph No. 14 fully or accurately describe its offerings with respect to its fares and therefore denies the remaining allegations in Paragraph No. 14.

**PARAGRAPH NO. 15:**

Therefore, CTA provides strong economic and convenience incentives to non-disabled individuals to purchase unlimited monthly or electronically-debited passes, while persons with disabilities are financially discouraged and dis-incented from purchasing monthly paratransit passes in the same service area, i.e., the City of Chicago and contiguous suburbs. Source: http://www.transitchicago.com/maps/fares.html

**ANSWER:**

CTA admits that it provides strong economic and convenience incentives to all individuals who ride its fixed-route system. CTA denies the remaining allegations in Paragraph No. 15.

**PARAGRAPH NO. 16:**

Persons with disabilities able to access and ride CTA fixed route may obtain Reduced Fare monthly passes for $35 per month.

214035v1

**ANSWER:**

CTA admits that one way persons with disabilities may access and ride CTA's fixed-route system is by purchasing a reduced fare 30-day pass for $35. CTA denies the remaining allegations in Paragraph No. 16.

**PARAGRAPH NO. 17:**

On March 17th, 2008, the "Seniors Ride Free" program was instituted by mass transit agencies throughout the State of Illinois, including the Defendants. In January, 2008 Illinois lawmakers approved and Governor Rod Blagojevich signed into law, through an amendatory veto process, House Bill 656 that provided new annual operating funds to northeastern Illinois' transit system.

**ANSWER:**

CTA admits that in January 2008 Illinois lawmakers approved and Governor Rod Blogojevich signed into law, through an amendatory veto process, House Bill 656 that provides new annual operating funds to northeastern Illinois' transit system and instituted a Seniors Ride Free policy for mass transit agencies, including PACE and the CTA. CTA further admits that, on or about March 17, 2008, CTA implemented the policy, as required by law. CTA denies the remaining allegations in Paragraph No. 17 to the extent that they imply that CTA instituted such policy change, or otherwise acted, for reasons other than to comply with statutory mandate. CTA further answers that House Bill 656 speaks for itself, and to the extent that the allegations contained in Paragraph 17 vary from or seek to alter or in any way amend the contents, meaning or intent of House Bill 656, CTA denies those allegations.

**PARAGRAPH NO. 18:**

The new law provides free rides on fixed routes to seniors aged 65 and older living in the RTA's service region of Cook, DuPage, Kane, Lake, McHenry, and Will counties on the Chicago Transit Authority (CTA), Metra and PACE.

**ANSWER:**

CTA admits the allegations in Paragraph No. 18.

**SERVICE**

**PARAGRAPH NO. 19:**

Many individuals with disabilities, including the individuals plaintiffs, must depend on paratransit to conduct crucial aspects of their daily lives. In some cases they must rely on paratransit to travel to and from their places of employment.  Others participate in volunteer activities. Some of these plaintiffs have a standing "subscription" reservation for a vehicle to pick them up on a regular schedule for their recurring trips to work and back. If they cannot rely on paratransit, they risk being unable to work and being deprived of their livelihood and of the personal rewards from being productive members of society.

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph No. 19 and therefore denies those allegations.

**PARAGRAPH NO. 20:**

In other cases, plaintiffs must depend on paratransit to travel to and from medical appointments, such as dialysis treatments, physical therapy and physician examinations.  All users depend on paratransit for important personal appointments and civic, educational, and religious activities much as individuals without disabilities rely on their personal automobiles, commuter rail, bus, other transportation facilities and even walking to conduct their personal affairs.

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph No. 20 and therefore denies those allegations.

**PARAGRAPH NO. 21:**

Despite the crucial role paratransit necessarily plays in the lives of its users, PACE fails to provide even minimally adequate serve and is materially inferior to the CTA rail and bus public transportation available to people without disabilities. A substantial portion of rides are late, often very late. Some rides arrive unreasonably early and leave before the scheduled arrival time. Some rides do not appear at all. Some riders are so extended and circuitous (often because the drivers are picking up and dropping off users at widely separated locations) that they last

9

much longer than a reasonably direct trip would. During these trips, riders are denied access to food and water, medicine, and bathroom facilities. PACE's inadequate performance poses a threat to the health of many of its users.

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph No. 21 and therefore denies those allegations.

**PARAGRAPH NO. 22:**

The impact of PACE's inadequate service on the lives of its riders is profound. In order to be able to adhere to their schedules or make appointments, riders must schedule rides for several hours before the time they would select if the service were reliable. They must appear at the pickup location well before the scheduled time to guard against a vehicle appearing too early and leaving. Thus, even if a particular ride is on time, PACE users must waste a significant amount of time each day attempting to be on time for important obligations. The unreliability of the PACE paratransit service causes serious disruptions to their schedules and erodes the quality of their lives.

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph No. 22 and therefore denies those allegations.

**PARAGRAPH NO. 23:**

In 1990, Congress enacted the ADA to address pervasive discrimination against persons with disabilities, including discrimination in the critical area of public transportation.  Congress stated that the purpose of the ADA is to provide: "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."

**ANSWER:**

CTA denies that any response is required to the allegations in Paragraph No. 23 because

they call for legal conclusions rather than factual responses.  To the extent a response is required,

CTA denies that the allegations in Paragraph No. 23 accurately or fully describe the reasons

Congress enacted the ADA and therefore CTA denies the allegations in Paragraph No. 23.

214035v1

**PARAGRAPH NO. 24:**

Title II of the ADA prohibits discrimination by public entities on the basis of disability, and specifically provides that no qualified individual with a disability shall be excluded from participation in or denied the benefits of the services, programs or activities with a disability from discrimination by a public entity "in connection with the provision of transportation service." 49 C.F.R. §37.5(a).

**ANSWER:**

CTA denies that any response is required to the allegations in Paragraph No. 24 because

they call for legal conclusions rather than factual responses.  To the extent a response is required,

CTA denies that the allegations in Paragraph No. 24 accurately or fully describe Title II of the

ADA or 49 C.F.R. § 37.5(a) and therefore CTA denies the allegations in Paragraph No. 24.

**PARAGRAPH NO. 25:**

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and its implementing regulations prohibit recipients of federal funding from discrimination against people with disabilities. Section 504 provides, in pertinent part: "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…."  29 U.S.C. § 794(a).

**ANSWER:**

CTA denies that any response is required to the allegations in Paragraph No. 25 because

they call for legal conclusions rather than factual responses.  To the extent a response is required,

CTA denies that the allegations in Paragraph No. 24 accurately or fully describe Section 504 of

the Rehabilitation Act of 1973 and therefore CTA denies the allegations in Paragraph No. 25.

**PARAGRAPH NO. 26:**

Recognizing that the lack of access to reliable transportation is a significant barrier encountered by persons with disabilities, 42 U.S.C. § 12101(a), the ADA expressly requires state and public entities that provide public transportation services (known as "fixed route" services) also to provide complementary "paratransit services" to individuals with disabilities, like the plaintiffs, who by virtue of their disabilities cannot otherwise use the public transportation system. 42 U.S.C. § 12143. The U.S. Department of Transportation's regulations established

pursuant to the ADA set forth the specific requirements for paratransit services. 49 C.F.R. § 37.121, et seq. Federal regulation also requires a public entity to ensure that any contractor that provides services on its behalf complies with the ADA. 49 C.F.R. § 37.23(a).

**ANSWER:**

CTA denies that any response is required to the allegations in Paragraph No. 26 because

they call for legal conclusions rather than factual responses.  To the extent a response is required,

CTA denies that the allegations in Paragraph No. 25 accurately or fully describes the ADA or

applicable regulations and therefore CTA denies the allegations in Paragraph No. 26.

**PARAGRAPH NO. 27:**

PACE paratransit customers are required to telephone to schedule a ride at least one day in advance of their travel date and must meet the vehicle outside at a curb at a specified pickup location. PACE paratransit is a shared ride service. PACE'S customers pay $2.50 per ride, regardless of the distance.

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph No. 27 and therefore denies those allegations.

**PARAGRAPH NO. 28:**

The plaintiffs are individuals within the City of Chicago and contiguous suburbs who need reliable and accessible public transportation to travel to work, medical appointments, religious services, and other critical life activities. Because of the nature of their disabilities and the inaccessibility to them of the general "fixed-route" public transportation system, these plaintiffs must rely on PACE paratransit as their primary means of transportation.

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph No. 28 and therefore denies those allegations.

**PARAGRAPH NO. 29:**

PACE paratransit is materially inferior to the public transportation available to people

without disabilities. By failing to provide the plaintiffs with a paratransit system that complies with federal law, defendants have unlawfully discriminated against plaintiffs, unlawfully excluded them from equal participation in public transportation services, and unlawfully denied them equal access to public transportation services. The plaintiffs are therefore entitled to declaratory, injunctive and equitable relief.

**ANSWER:**

CTA denies the allegations in Paragraph No. 29.

## INFRASTRUCTURE

**PARAGRAPH NO. 30:**

As mentioned supra, the ADA was passed in 1990; as such, the CTA and related entities have been on notice for the past eighteen years of their obligation under federal law to make the transit system accessible to persons with disabilities; despite that clear notice and the passage of almost two decades, the CTA remains inaccessible at many points throughout its fixed route rail and bus system.

**ANSWER:**

CTA admits that the ADA was passed in 1990, and admits that certain of its rail stations

are not currently accessible. Answering further, CTA states that its bus system is fully

accessible. CTA denies that any response is required to the remaining allegations in Paragraph

No. 30 because they call for legal conclusions rather than factual responses. To the extent a

response is required, CTA denies the remaining allegations in Paragraph No. 30.

**PARAGRAPH NO. 31:**

Additionally, even at points where the CTA system is arguably accessible to some persons with disabilities, the provisions for persons with disabilities are of inadequate capacity and not calculated to integrate significant numbers of persons with disabilities into the mainstream. In fact, if all persons with disabilities attempted to use fixed route transit, the CTA system would grind to a halt.

**ANSWER:**

CTA admits that its fixed route-system is accessible to persons with disabilities.   CTA

denies the remaining allegations in Paragraph No. 31.

214035v1

**PARAGRAPH NO. 32:**

While, eighteen years after the passage of the ADA, the large number of CTA rail stations still do not have elevators, even those with elevators require attendants to manually drag ramps out to load persons in wheelchairs into railcars, and significantly delay service as a result; additionally, elevators are frequently out of service with no prior notice provided to riders.

**ANSWER:**

CTA admits that certain of its rail stations do not currently have elevators, and that ramps

are available to assist persons in wheelchairs into railcars.  CTA denies the remaining allegations

in Paragraph No. 32.

**PARAGRAPH NO. 33:**

While the CTA touts that 100% of its bus fleet has lifts for wheelchairs, if patrons cannot get to bus stops because they are inaccessible and lack nearby curb-cuts to accommodate patrons with disabilities, the presence of lifts on the buses is meaningless.

**ANSWER:**

CTA admits that 100% of its bus fleet is accessible to persons with disabilities.  CTA

denies the remaining allegations in Paragraph No. 31.

## JURISDICTION AND VENUE

**PARAGRAPH NO. 34:**

This Court has jurisdiction under 28 U.S.C. § 1331 because the claims arise under federal law.

**ANSWER:**

CTA does not contest the Court's jurisdiction but denies it discriminated against or

violated any laws pertaining to Plaintiffs.

**PARAGRAPH NO. 35:**

This Court has jurisdiction over plaintiffs' request for declaratory judgment pursuant to 28 U.S.C. § ~ 2201 and 2202.

14

214035v1

**ANSWER:**

CTA does not contest the Court's jurisdiction but denies it discriminated against or

violated any laws pertaining to Plaintiffs.

**PARAGRAPH NO. 36:**

Venue of this action properly lies in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 (a)(1)-(2) because many of the events and omissions giving rise to Plaintiffs' claims are occurring in this district.

**ANSWER:**

CTA does not contest venue but denies it discriminated against or violated any laws

pertaining to Plaintiffs.

**PARTIES**

**PARAGRAPH NO. 37:**

Plaintiff Independent Movement of Paratransit Riders for Unity, Vehicles, and Equality ("IMPRUVE") is a non-profit membership organization that works on behalf of people with disabilities in the Chicago metropolitan area to ensure that civil rights laws important to people with disabilities are enforced.

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph No. 37 and therefore denies those allegations.

**PARAGRAPH NO. 38:**

Plaintiffs are persons with disabilities residing in the Chicago ADA Paratransit area. Most, but not all of the plaintiffs are members of IMPRUVE. All plaintiffs depend on Paratransit for essential services such as medical appointments, shopping, religious services, community activities, family gatherings, legal and civic proceedings, and educational and employment opportunities. All of the plaintiffs have been eligible for paratransit services from PACE at all times relevant to this Complaint. Although each individual's situation is unique, it is a fair statement to say that their impediments are more severe than individuals riding fixed route transit.

15

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph No. 38 and therefore denies those allegations.

**PARAGRAPH NO. 39:**

On information and belief, the plaintiffs represent perhaps one of the most physically, economically, and politically disadvantaged groups imaginable; it has been estimated that, among the Chicago ADA paratransit patrons:
- 80% are African-American
- 77% have no household vehicle
- 81% have annual income below $20,000; 69% below $15,000; 47% below $10,000; 16% below $5,000;
- 58% are 65 and older. (2004 CTA figures).

**ANSWER:**

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph No. 39 and therefore denies those allegations.

## ALLEGED CLAIMS

### First Alleged Claim for Relief

(Alleged Equal Protection, ADA, and Rehabilitation Act – All defendants)

**PARAGRAPH NO. 40:**

Plaintiffs reallege and incorporate by reference all facts set forth in the previous paragraphs, and further allege:

**ANSWER:**

CTA incorporates by reference its answers to Paragraphs 1 through 39 as though fully

stated herein.

**PARAGRAPH NO. 41:**

By providing free mass transit service to individuals 65 years of age and older, while denying that service to persons with disabilities 65 years of age and older, defendant Governor Blagojevich and RTA, CTA, and PACE have denied persons with disabilities, including certain

16

plaintiffs, the equal protection of the laws of the State of Illinois, and violated the ADA and Rehabilitation Act, as well as 42 U.S.C. § 1983.

**ANSWER:**

CTA denies the allegations in Paragraph No. 41.

### Second Alleged Claim for Relief

(Alleged Violations of the Americans with Disabilities Act – RTA, CTA and PACE)

**PARAGRAPH NO. 42:**

Plaintiffs reallege and incorporate by reference all facts set forth in the previous paragraphs, and further allege:

**ANSWER:**

CTA incorporates by reference its answers to Paragraphs 1 through 41 as though fully

stated herein.

**PARAGRAPH NO. 43:**

At all relevant times, plaintiffs are and have been "qualified individuals with a disability" within the protection of Title II of the ADA, 42 U.S.C. § 12131.

**ANSWER:**

CTA denies that any response is required to the allegations in Paragraph No. 43 because

they call for legal conclusions rather than factual responses.  To the extent a response is required,

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations in Paragraph No. 43 and therefore denies those allegations.

**PARAGRAPH NO. 44:**

Defendants RTA, CTA, and PACE have discriminated against the plaintiffs in violation of Title II of the ADA, 42 U.S.C. 12 143(a), by erecting insurmountable economic barriers to plaintiffs' use of complementary paratransit by, *inter alia,* setting the monthly pass fare at $150.

**ANSWER:**

CTA denies the allegations in Paragraph No. 44.

**PARAGRAPH NO. 45:**

Defendants RTA, CTA, and PACE have discriminated against the plaintiffs in violation of Title II of the ADA, 42 U.S.C. 12 143(a), by failing to provide transportation services to individuals with disabilities, including individuals who are mobility impaired, that are sufficient to provide these individuals a level of service that is comparable to the level of designated public transportation services provided to individuals without disabilities.

**ANSWER:**

CTA denies the allegations in Paragraph No. 45.

**PARAGRAPH NO. 46:**

Defendants are "public entities" under Title II of the ADA, RTA, CTA and PACE are programs or activities of a public entity.

**ANSWER:**

CTA admits that Defendants are "public entities" under Title II of the ADA. CTA denies

the remaining allegations in Paragraph No. 46.

**PARAGRAPH NO. 47:**

Defendants have unlawfully failed to meet required service criteria for their complimentary paratransit system. 49 C.F.R. §37.13 1. Specifically, defendants have permitted an operational pattern and practice that significantly limits service to ADA paratransit-eligible persons. 49 C.F.R. § 37.131(0(3).

**ANSWER:**

CTA denies the allegations in Paragraph No. 47.

**PARAGRAPH NO. 48:**

Defendants have engaged in a continuing and pervasive pattern and practice that have caused substantial numbers of untimely pickups for initial and return trips and substantial numbers of trip denials or missed trips. 49 C.F.R. § 37.131(0(3). These violations of the ADA and its implementing regulations are also evidenced by: unreasonably lengthy and circuitous trips; a significant number of driver "no-shows" resulting in missed trips; discourteous telephone

18

reservation service; inadequate telephone coverage and connections, including failure to answer the telephone, placing callers on hold for excessively long periods, and dropped calls; failing to provide accurate information about the location of assigned vehicles; failing to respond to complaints and requests for information; dangerous driving; discourteous drivers insensitive to the needs of disabled riders; recording a large number of "false no-shows"; flawed implementation and enforcement of the "No-Show/Late Cancellation Policy"; failing to announce the arrival of the vehicle to visually-impaired riders; creating health hazards caused by exposure to the elements due to late pickups and erroneous ride status information; failing to adequately train drivers regarding the need and method for restraining wheelchairs and scooters inside paratransit vehicles; failing to equip vehicles with adequate heat and air conditioning systems, scooter restraints, and operational wheelchair lifts; and other operational problems within the control of RTA, CTA and PACE.

**ANSWER:**

    CTA denies the allegations in Paragraph No. 48.

**PARAGRAPH NO. 49:**

    Defendants have denied plaintiff's equal participation in its transportation system because of their disabilities, denied plaintiffs the benefits of the services, programs, and activities of RTA, CTA and PACE because of their disabilities, and discriminated against plaintiffs because of their disabilities.

**ANSWER:**

    CTA denies the allegations in Paragraph No. 49.

**PARAGRAPH NO. 50:**

    Defendants' failure to provide plaintiffs with equal, meaningful access to the benefits of the facilities, programs, services, and activities of RTA, CTA and PACE violates the ADA, 42 U.S.C. § 12131, et seq., and its implementing regulations, 49 C.F.R. Part 37.

**ANSWER:**

    CTA denies the allegations in Paragraph No. 50.

**PARAGRAPH NO. 51:**

    Defendants' acts and omissions constitute ongoing and continuous violations of Title II of the ADA, and, unless restrained and enjoined from doing so, defendants will continue to violate Title II. Defendants' acts and omissions, unless enjoined, will continue to inflict an immediate threat of irreparable injuries for which plaintiffs have no adequate remedy at law.

214035v1

**ANSWER:**

CTA denies the allegations in Paragraph No. 51.

**PARAGRAPH NO. 52:**

In engaging in the conduct described above, Defendants have either intentionally discriminated against plaintiffs or been deliberately indifferent to the strong likelihood that the pursuit of its policies would result in violations of federally protected rights.

**ANSWER:**

CTA denies the allegations in Paragraph No. 52.

### Third Alleged Claim for Relief

(Alleged Violations of the Rehabilitation Act – RTA, CTA, and PACE)

**PARAGRAPH NO. 53:**

Plaintiffs reallege and incorporate by reference all facts set forth in the previous paragraphs and further allege:

**ANSWER:**

CTA incorporates by reference its answers to Paragraphs 1 through 52 as though fully

stated herein.

**PARAGRAPH NO. 54:**

Plaintiffs are "qualified individual(s) with a disability" under Section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794. They are also "handicapped person(s)" within the meaning of 49 C.F.R. § 27.5.

**ANSWER:**

CTA denies that any response is required to the allegations in Paragraph No. 54 because

they call for legal conclusions rather than factual responses.  To the extent a response is required,

CTA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations in Paragraph No. 54 and therefore denies those allegations.

214035v1

**PARAGRAPH NO. 55:**

Defendants RTA, CTA, and PACE operate "program(s) or activity receiving Federal financial assistance" under Section 504 of the Rehabilitation Act.

**ANSWER:**

CTA admits that it operates "program(s) or activity receiving Federal financial

assistance" but denies that it discriminated against or violated any laws pertaining to Plaintiffs,

including under Section 504 of the Rehabilitation Act.

**PARAGRAPH NO. 56:**

Defendants have denied plaintiffs equal participation in their transportation services and made their participation unduly burdensome solely by reason of plaintiffs' disabilities in violation of section 504 of the Rehabilitation Act of 1973 and its implementing regulations. 49 C.F.R. Part 27.

**ANSWER:**

CTA denies the allegations in Paragraph No. 56.

**PARAGRAPH NO. 57:**

Defendants have denied plaintiffs the benefits of the service, programs, and activities of its transportation services.

**ANSWER:**

CTA denies the allegations in Paragraph No. 57.

**PARAGRAPH NO. 58:**

Defendants have subjected plaintiffs to discrimination solely by reason of their disabilities.

**ANSWER:**

CTA denies it discriminated against or violated any laws pertaining to plaintiffs and

denies the remaining allegations in Paragraph No. 58.

21

**PARAGRAPH NO. 59**:

These violations of Section 504 by defendants establish a claim for declaratory and injunctive relief and compensatory damages against defendant pursuant to Section 505 of the Rehabilitation Act, 29 U.S.C. § 794a(a)(2).

**ANSWER**:

CTA denies the allegations in Paragraph No. 59.

**PARAGRAPH NO. 60**:

In engaging in the conduct described above, defendants have either intentionally discriminated against plaintiffs or been deliberately indifferent to the strong likelihood that the pursuit of its policies would result in violations of federally protected rights.

**ANSWER**:

CTA denies the allegations in Paragraph No. 60.

**Fourth Alleged Claim for Relief**

(Alleged Violations of the 42 U.S.C. § 1983 – Civil Rights Act – All Defendants)

**PARAGRAPH NO. 61**:

Plaintiffs reallege and incorporate by reference all facts set forth in the previous paragraphs, and further allege:

**ANSWER**:

CTA incorporates by reference its answers to Paragraphs 1 through 60 as though fully

stated herein.

**PARAGRAPH NO. 62**:

Defendants' violations of 42 U.S.C. § 12132, *et seq,* and Section 504 of the Rehabilitation Act, as set forth in plaintiffs' first, second and third claims for relief, establish a cause of action under 42 U.S.C. § 1983 for declaratory and injunctive relief and compensatory damages against defendants. Specifically, the defendants, acting under color of state law, have violated the rights of the plaintiffs under the ADA, Section 504 of the Rehabilitation Act, and the Equal Protection clause of the Fourteenth Amendment.

22

**ANSWER:**

CTA denies the allegations in Paragraph No. 62.

**PARAGRAPH NO. 63:**

In engaging in the conduct described above, defendants have either intentionally discriminated against plaintiffs or been deliberately indifferent to the strong likelihood that the pursuit of its policies would result in violations of federally protected rights.

**ANSWER:**

CTA denies the allegations in Paragraph No. 63.

**AFFIRMATIVE DEFENSE**

Plaintiffs' claims alleging violations of Title II of the American with Disabilities Act, 42 U.S.C. § 12131 *et seq.,* and/or Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, which occurred more than two years before this lawsuit was filed, are time-barred.

\*                         \*                         \*

WHEREFORE, Defendant Chicago Transit Authority prays that this Court dismiss with prejudice Plaintiffs' First Amended Complaint as against CTA, enter judgment against Plaintiff and in favor of CTA, and award CTA its costs as is permitted by law and such other relief as the Court deems just and proper.

Respectfully submitted,
CHICAGO TRANSIT AUTHORITY


By: /s/  Judith A. Kelley_____
　　 Judith A. Kelley, One of Its Attorneys

Dated: July 31, 2008

214035v1

Brad L. Jansen
Judith A. Kelley
Brigett R. Pawlak
CHICAGO TRANSIT AUTHORITY
Law Department
567 W. Lake Street  6th Floor
Chicago, IL 60661
(312) 681-2929
Fax (312) 681-2995
jkelley@transitchicago.com

214035v1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on July 31, 2008 she filed electronically in accordance with the General Order on Electronic Case Filing, Defendant Chicago Transit Authority's Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint, constituting service upon the following counsel of record who are registered participants of the CM/ECF system:

Christopher Davis Kruger, Esq.
The Law Offices of Christopher Kruger
2022 Dodge Avenue
Evanston, IL 60201

Kevin G. Costello, Esq.
Zukowski, Rogers, Flood & McArdle
50 Virginia Street
Crystal Lake, IL 60014

/s/ Judith A. Kelley
Judith A. Kelley
Chief Attorney
Labor, Policy and Appeals
Chicago Transit Authority
Law Department
567 W. Lake Street
Chicago, Illinois 60661
Tel: (312) 681-2929
Fax: (312) 681-2995
jkelley@transitchicago.com