UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM K. CROSBY, HAROLD BELLAMY, JEANETTE EXOM, Individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>  vs.<br><br>REGIONAL TRANSPORTATION AUTHORITY, JIM REILLY, CHAIRMAN; CHICAGO TRANSIT AUTHORITY, CAROLE BROWN, CHAIRMAN; PACE SUBURBAN BUS, RICHARD KWASNESKI, CHAIRMAN,<br><br>                Defendants. | 07 C 6235 |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

      This case comes before the court on the joint motion of Defendants Regional Transit Authority, Chicago Transit Authority, and PACE Suburban Bus ("Defendants") for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on Counts IV, V, and VI of the complaint. Also before the court is Plaintiff Harold Bellamy's cross-motion for partial judgment on the pleadings as to the same counts. For the reasons stated below, Defendants' motion is granted in part and denied in part. Bellamy's motion is denied in its entirety.

## BACKGROUND

Plaintiff Harold Bellamy ("Bellamy") is over sixty-five years old and a resident of the Chicago area. Bellamy suffers from disabilities that render him unable to use traditional fixed-route public transportation services offered by Defendant Chicago Transit Authority ("CTA"). Defendant PACE Suburban Bus ("PACE") provides paratransit services to disabled persons like Bellamy who are incapable of riding fixed-route buses and trains. To deliver paratransit service, PACE dispatches fleets of vehicles to pick up qualified riders from any location within three-quarters of a mile of any fixed-route rail or bus service provided by CTA. At the time the complaint was filed, PACE charged paratransit riders $2.25 for a single ride, $22.50 for a book of ten tickets, and $150.00 for a monthly pass.[1]

Although PACE continues to charge senior citizen paratransit patrons to utilize its services, recent changes in Illinois law have allowed seniors who use fixed-route public transportation to ride for free. In 2008, Illinois enacted the Seniors Ride Free Act ("SRFA"). Pub. L. 95-708, 2007 Ill. Laws 708. The Act provides that "any fixed route public transportation services provided by" the CTA "shall be provided without charge

---

[1] We take judicial notice of the fact that PACE increased paratransit fares to $3.00 for a single ride and eliminated the monthly pass since Bellamy filed his complaint. *See* Fed. R. Evid. 201; *Deicher v. City of Evansville*, 545 F.3d 537, 541 (7th Cir. 2008) ("a court can take judicial notice of matters of public record").

to all senior citizens[.]" *See* 70 ILCS 3605/51. As a result of the SRFA, senior citizens who use fixed-route transit are not charged a fare, while senior citizens who are too disabled to utilize traditional methods of public transit must pay.

Bellamy filed suit against Defendants on November 2, 2007, and later amended his complaint to add claims challenging the legality of the senior citizen paratransit fares under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12143; the Rehabilitation Act, 29 U.S.C. § 794; and 42 U.S.C. § 1983. Bellamy asserts that requiring senior citizen paratransit patrons to pay a fare while allowing senior fixed-route passengers to pay nothing violates his rights under the ADA, the Rehabilitation Act, and the Equal Protection Clause of the 14th Amendment. U.S. Const. Amend. XIV. Defendants answered the complaint on June 4, 2009, and moved for partial judgment on the pleadings with respect to the fare-related counts on February 3, 2010. Bellamy cross-moved for partial judgment on the pleadings on those same counts on April 5, 2010.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), a party can move for judgment on the pleadings after the filing of the complaint and answer. A party is entitled to judgment on the pleadings "when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that

there are no material issues of fact to be resolved[.]" *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). In deciding a motion for judgment on the pleadings, a court construes the facts alleged in the complaint in the light most favorable to the non-moving party. *R.J. Corman Derailment Servs., L.L.C. v. Int'l Union, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003). "The court, however, is not bound by the nonmoving party's legal characterizations of the facts." *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). In addition, the court may also take judicial notice of matters of public record when deciding a motion for judgment on the pleadings. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991). Cross-motions for judgment on the pleadings are assessed independently – denial of one does not necessarily constitute the grant of the other. *See M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944).

## DISCUSSION

As a preliminary matter, Defendants contend that we should not consider Bellamy's constitutional challenge to the Seniors Ride Free Act at this time because proper notice has not been provided to the Illinois Attorney General in conformity with Fed. R. Civ. P. 5.1(a) and 28 U.S.C. § 2403(b). Bellamy has not complied with these requirements, so we decline to consider the matter until he addresses the notice issue. *See Max M. v. New Trier High Sch. Dist.*, 859 F.2d 1297, 1300 (7th Cir. 1988)

(declining to consider constitutional issue absent provision of notice to state attorney general). We therefore deny without prejudice the portions of the parties' motions that concern Bellamy's claims under the Fourteenth Amendment and 42 U.S.C. § 1983.

We now turn to the parties' cross-motions for judgment on the pleadings as to Bellamy's claims under the Rehabilitation Act and the ADA.[2] Both Bellamy and Defendants contend that they are entitled to a ruling in their favor under the regulations that enforce provisions of the ADA that govern public transit entities' provision of paratransit services.

Bellamy argues that in light of the SRFA's elimination of fares for senior citizens on fixed-route transit, Defendants' charging senior citizen paratransit riders a fare violates the ADA and Rehabilitation Act. Defendants maintain that charging Bellamy a fare for use of their paratransit service is permissible because the relevant regulations permit Defendants to calculate paratransit fares without reference to discounts given to fixed-route riders.

---

[2] Bellamy's claim under 42 U.S.C. § 1983 seeks damages for violations of rights under both the United States Constitution and federal statutes. We will not address Bellamy's **§** 1983 claim as it relates to alleged violations of his 14th Amendment rights for reasons stated above. The other aspect of Bellamy's § 1983 action is premised upon a finding that Defendants violated his statutory rights under the ADA and the Rehabilitation Act. Because the success of Bellamy's motion for judgment on the pleadings with respect to this aspect of his §1983 action wholly depends on our analysis of Bellamy's other claims, we will not provide a separate analysis for that claim.

Because both parties agree that the proper construction of the regulations at issue will determine the success of each party's motion, we will briefly restate the pertinent statutes and regulations before analyzing the merits of the parties' interpretations. Courts confronted with suits presenting claims under both the Rehabilitation Act and Title II, Part B of the ADA have applied the same ADA-based analysis to actions brought under both statutes. *Boose v. Tri-County Metro. Trans. Dist. of Or.*, 587 F.3d 997, 1001 n.5 (9th Cir. 2009); *see also Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 675-76 (5th Cir. 2004). The statutory language of Title II, Part B of the ADA indicates that actions filed under the two statutes should be examined under one standard – 42 U.S.C. § 12143(a) explicitly states that violation of the ADA also constitutes a violation of the Rehabilitation Act. Additional proof of the propriety of considering claims under both statutes using the same criteria can be found in each statute's enforcement regulations, which condition an entity's satisfaction of its Rehabilitation Act obligations upon compliance with the regulations issued pursuant to Title II, Part B of the ADA. *See* 49 C.F.R. 37.21 (compliance with Secretary of Transportation's regulations issued pursuant to authority under Title II, Part B of the ADA "is a condition of compliance with section 504 of the Rehabilitation Act"); 49 C.F.R. 27.19 (requiring adherence to regulations issued under ADA to satisfy responsibilities under Rehabilitation Act). Therefore, we will assess the merits of the

parties' requests for judgment on the pleadings as to Bellamy's claims under the ADA and the Rehabilitation Act using standards contained within the regulations promulgated by the Secretary of Transportation pursuant to Title II, Part B of the ADA.

Title II, Part B of the ADA states that a public entity charged with operating a fixed route transit system must provide disabled persons with paratransit services that are "comparable to the level of designated public transportation services provided to individuals without disabilities[.]" 42 U.S.C. § 12143(a). The same statute gives the Secretary of Transportation the exclusive authority to issue regulations to effectuate the statute's guarantee of comparable paratransit service. 42 U.S.C. § 12143(b). To that end, the Secretary has issued regulations governing various aspects of paratransit service, including the fares a public transit body may charge a paratransit rider. *See* 49 C.F.R. §§ 37.123-37.133.

Under 49 C.F.R. § 37.131(c), an entity's paratransit fare "shall not exceed twice the fare that would be charged to an individual paying full fare (i.e., without regard to discounts) for a trip of similar length, at a similar time of day, on the entity's fixed route system." An accompanying appendix providing "definitive guidance" concerning the meaning of the fare regulation states that when calculating the appropriate paratransit fare, "[a]pplicable charges like transfer fees or premium service charges may be added to the amount, but discounts (e.g., the half-fare discount for off-peak fixed route travel

by elderly and handicapped persons) would not be subtracted." 49 C.F.R. Pt. 37, App. D at 1, 35-36.

Defendants argue that charging senior citizen paratransit riders twice the full fixed-route fare to use paratransit is permissible under the ADA because the SRFA constitutes a discount and the regulations calculate the appropriate paratransit fare "without regard to discounts[.]" 49 C.F.R. § 37.131(c). "Administrative rules are subject to the same well-known maxims of construction as legislative statutes." *First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 476 (7th Cir. 1999). One well-known canon of construction holds that terms that are undefined are given their ordinary meaning. *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). The typical understanding of a discount is a "reduction from the full amount or value of something, esp. a price." BLACK'S LAW DICTIONARY 476 (7th ed. 1999). SRFA authorized a reduction in the price of a public transit fare from full price to zero for fixed-route public transit riders aged sixty-five and older. The ordinary definition of discount would seem to encompass the fare reduction instituted by SRFA.

Bellamy contends in response that SRFA is not a discount but a legislative directive, legislative entitlement, or fare elimination; as such the "full fare" fixed-route baseline used to calculate the proper paratransit fare should be zero. Bellamy's attempts to redefine the operation of the SRFA based on its origin in the Illinois legislature do

not to change the fact that the SRFA reduced the price of public transportation for senior citizens and therefore provided a discount to that class of citizens under the traditional conception of that word. The identity of the body that introduces a fare reduction does not affect whether the it constitutes a discount; the determinative consideration is whether the plain meaning of the word would encompass the price decrease at issue. Bellamy's other contention is that SRFA is not a discount because it eliminates rather than decreases public transit fares. The difference between an elimination and a reduction is not one of kind but of degree. The effect of the SRFA is the determining factor when assessing whether or not the practices authorized by SRFA constitute a discount. Because the legislation authorizes a reduction in fares we find that it is a discount as that term is used in 49 C.F.R. § 37.131(c). Defendants are not required to take SRFA into account when determining the appropriate paratransit fare.

Bellamy also spends a considerable portion of his brief arguing that the Supreme Court's opinion in *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), demands that we reject Defendants' arguments regarding the meaning of the word discount. Bellamy's argument is premised upon a misunderstanding of the *Chevron* doctrine. *Chevron* pertains to circumstances in which a party disputes a federal agency's interpretation of a statute the agency is charged with administering. *Id.* at 842-44.

Bellamy does not contest the Secretary of Transportation's interpretation of 42 U.S.C. § 12143 as expressed in the regulation but rather disputes how Defendants, state-government entities, have construed the language of the regulation. As a result, *Chevron* is not pertinent to the resolution of the parties' motions.

Interpreting 49 C.F.R. § 37.131(c) using the ordinary definition of discount, SRFA's fare reduction would not factor into the "fare that would be charged to an individual paying full fare . . . on the entity's fixed route system" figure that forms the baseline for the paratransit fare calculation. Under this standard, Defendants' senior citizen paratransit fares are lawful under the ADA and the Rehabilitation Act.

Bellamy also argues that even if requiring paratransit riders to pay a fare is lawful under the relevant regulations, Defendants' conduct nevertheless violates the Rehabilitation Act's general prohibition of discrimination against otherwise qualified disabled individuals. 29 U.S.C. § 794(a). The Rehabilitation Act's sweeping condemnation of discrimination against the disabled does not trump other statutory language that specifically addresses what constitutes discrimination under the Rehabilitation Act in the paratransit context. In this instance, the ADA sets out the standards for assessing discrimination in the particular context of paratransit. The statute also states that "[i]t shall be considered discrimination for purposes of . . . section 794 of Title 29[,]" i.e., the Rehabilitation Act, to violate the requirements of §

12143 and its accompanying regulations. 42 U.S.C. § 12143(a). In light of the § 12143's enumeration of what qualifies as discrimination under the Rehabilitation Act in the specific context at issue here, the generic prohibition against discrimination found in the Rehabilitation Act does not apply to Bellamy's claim. *See Bloate v. United States*, 130 S. Ct. 1345, 1354 (2010) ("[g]eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment"). Congress has declared what it considers to be a discriminatory practice in the paratransit context, and we are bound by their determination. We therefore decline Bellamy's invitation to assess the paratransit fare system under the generalized language of the Rehabilitation Act.

Finally, Bellamy argues that the SRFA is preempted by federal law and that Defendants' paratransit fares constitute an unlawful special charge as that term is defined in the ADA regulations. These claims are not found in Bellamy's complaint and we therefore decline to address them here. *See U.S. v. Woods*, 925 F.2d 1580, 1581 (7th Cir. 1991) ("[t]he district court may not look beyond the pleadings" in deciding motions for judgment on the pleadings).

Bellamy cannot prove any set of facts demonstrating he is entitled to relief on his ADA and Rehabilitation Act claims and Defendants have demonstrated there are no material issues of fact to be resolved. Therefore, we grant Defendants' motion for

judgment on the pleadings as to Counts IV and V. We also grant Defendants' motion as to the portion of Count VI requesting damages for violations of Bellamy's rights under the Rehabilitation Act and the Americans with Disabilities Act. We deny both Defendants' and Bellamy's motions with respect to the other portion of Count VI requesting relief for alleged violations of Bellamy's rights under the 14th Amendment. Bellamy's motion for judgment on the pleadings is denied in its entirety.

## CONCLUSION

Defendants' motion for judgment on the pleadings is granted in part and denied in part. Bellamy's motion for judgment on the pleadings is denied in its entirety.

_____
Charles P. Kocoras
United States District Judge

Dated:   June 11, 2010